```
 1  James A. McDaniel (State Bar No. 300041)
    jmcdaniel@terralaw.com
 2  TERRA LAW LLP
    50 W. San Fernando St., Suite 1415
 3  San Jose, California 95113
    Telephone: (408) 299-1200
 4  Facsimile:  (408) 998-4895
 5  Attorneys for Creditor
    Quail Creek Estates Mutual Water Company
 6
 7
 8                  UNITED STATES BANKRUPTCY COURT
 9                  NORTHERN DISTRICT OF CALIFORNIA
10
11  In re:                          Chapter 13
                                    Case No. 15-54015
12
13  NAROG, KIM                      MOTION FOR RELIEF FROM STAY;
                                    MEMORANDUM OF POINTS AND
14       Debtor.                    AUTHORITIES IN SUPPORT OF
                                    MOTION FOR RELIEF FROM STAY
15
                                    Date:  May 17, 2016
16                                  Time:  10:30 a.m.
                                    Place: 280 S. 1st Street
17                                         Courtroom 3099
                                           San Jose, CA 95113
18                                  Judge: Hon. Stephen L. Johnson
```

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL AND PROCEDURAL BACKGROUND | 2 |
| | A. Debtor's History of Bad Faith Filings to Frustrate Creditors | 2 |
| | B. The Present Voluntary Petition | 3 |
| |    1. 4680 Meritage Court, Gilroy | 3 |
| |    2. 17411 Avenida, Los Altos Prunedale | 4 |
| |    3. 22425 Rancho Ventura St., Cupertino | 4 |
| |    4. 1255 Lions Peak Lane, San Martin | 5 |
| |    5. 1185 Quail Ridge Way, Hollister | 5 |
| |    6. 1659 Little River Dr., Salinas | 5 |
| | C. Debtor Claims he Receives $14,990 Per Month in Rental Income and That He is Not Obligated to Pay the Above Mortgages | 6 |
| | D. Debtor is Not Paying Post-Petition Obligations as They Accrue | 6 |
| III. | ARGUMENT | 7 |
| | A. Relief the Automatic Stay Should be Granted Because the Bankruptcy was Filed in Bad Faith | 7 |
| |    1. Relief Should be Granted for Failure to Make Post-Petition Payments | 8 |
| |    2. Debtor has Made Substantial Misrepresentations, Under Penalty of Perjury, Regarding the Secured Claims Against his Listed Assets | 9 |
| |    3. Debtor Does Not Qualify for Chapter 13 Discharge Because He Secured, Noncontingent, Liquidated Debt in Excess of the Debt Limitations – 11 U.S.C. § 109(e) | 12 |
| |    4. Debtor Does Not Qualify for Chapter 7 Discharge | 13 |
| IV. | CONCLUSION | 14 |

# **TABLE OF AUTHORITIES**

Page

Cases

*In re Kinney*, 51 B.R. 840
　(Bankr. C.D. Cal. 1985) ...................................................................................................7

*In re Thalmann*, 469 B.R. 677
　(Bankr. S.D. Tex. 2012) .................................................................................................12

*Slack v. Wilshire Ins. Co.*, 187 F.3d 1070
　(9th Cir. 1999) ................................................................................................................12

Statutes

11 United States Code section 109 ..............................................................................................12

11 United States Code section 362 ........................................................................................1, 7, 8

11 United States Code section 366 ................................................................................................8

11 United States Code section 727 ..............................................................................................13

Rules

Bankruptcy Local Rules 4000-1 .....................................................................................................1

Federal Rules of Bankruptcy Procedure 4001 ...............................................................................1

4834-5941-7647, v. 1

4834-5941-7647, v. 1　　　　　　　　　　　　　　ii
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Case: 15-54015　Doc# 40　Filed: 04/05/16　Entered: 04/05/16 18:24:36　Page 3 of 17

Secured Creditor Quail Creek Mutual Water Company ("Quail Creek") hereby moves the Court for an order granting relief from the automatic stay. This motion is made pursuant to 11 U.S.C. § 362, Fed. R. Bankr. P. 4001(a), and B.L.R. 4000-1 on the grounds that cause exists for relief from the stay because the voluntary petition was filed in bad faith to frustrate secured creditors.

Quail Creek requests that the order granting relief from stay be made effective immediately and that the 14-day waiting period provided in Fed. R. Bankr. P. 4001(a)(3) be waived.

This motion is based on the Notice of the Hearing, Memorandum of Points and Authorities, and Declarations of James A. McDaniel and David B. Draper, filed and served herewith, and any documentary or oral evidence as may be presented prior to or at the hearing on this motion.

YOU ARE HEREBY INFORMED THAT NO WRITTEN RESPONSE IS REQUIRED IN ORDER TO OPPOSE THIS MOTION. HOWEVER, IF YOU OR YOUR COUNSEL DO NOT APPEAR AT THE HEARING ON THIS MOTION, THE RELIEF REQUESTED MAY BE GRANTED.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Debtor Kim Narog ("Debtor") has long been abusing the bankruptcy process to frustrate his secured creditors. Debtor's voluntary petition, filed on December 22, 2015, was filed in bad faith in Debtor's most recent Bankruptcy Code abuse as he has no hope of ever qualifying for Chapter 13 relief.

Debtor claims, according to his schedules attested to under penalty of perjury, that he has real property assets that are largely unencumbered in the amount of $5,633,000. He only admits to $984,200 in debts secured by one of his properties.

In reality, Debtor has at least $5,037,032.25 in secured, noncontingent, liquidated debt that Debtor intentionally omitted from his schedules in order to use the 11 U.S.C. § 362 stay against his creditors. Debtor is ineligible for Chapter 13 discharge if his secured assets at the time of filing his petition are in excess of $1,149,525.

Debtor cannot receive discharge and he is using the bankruptcy statutes to collect income from the heavily mortgaged properties and putting it directly into his pocket, while the automatic stay protects him from multiple foreclosures.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Debtor's History of Bad Faith Filings to Frustrate Creditors

Debtor has a long history of using and abusing the bankruptcy process to frustrate his creditors. One such incident has been documented by Order of the United States Bankruptcy Court for the Western District of North Carolina. See, Declaration of James A. McDaniel in support of Motion for Relief from Automatic Stay ("McDaniel Decl."), ¶ 2, Exh. A.

Debtor's earlier, documented, bad faith filing came about when Fannie Mae began foreclosure proceedings against a property owned by Debtor in June of 2010 the (the "North Carolina Property"). The Debtor filed a voluntary petition under Chapter 11 in the United States Bankruptcy Court for the Northern District of California, Case No. 10-57683. That case was dismissed on September 9, 2010 without prejudice. The foreclosure sale for the North Carolina Property was renoticed to October 6, 2010. McDaniel Decl., ¶ 2, Exh. A.

Two days before the trustee's sale, Debtor filed a second Chapter 11 bankruptcy petition in California on October 4, 2010, Case No. 10-60384. This resulted in the North Carolina foreclosure being stayed. This Chapter 11 Bankruptcy was converted from a Chapter 11 to a Chapter 7 on March 7, 2011. Debtor received a discharge in case no. 10-60384 on September 14, 2011. Debtor may not obtain another discharge in chapter 7 until after September 14, 2019. On June 2, 2011 the California Bankruptcy Court entered an order abandoning the real property in Debtor's bankruptcy estate, including the North Carolina Property. The foreclosure of Debtor's North Carolina Property was then re-set to take place on July 25, 2011. McDaniel Decl., ¶¶ 2, Exh. A.

Minutes before the scheduled foreclosure on July 25, 2011, Debtor filed a voluntary Chapter 11 petition in the United States Bankruptcy Court, Western District of North Carolina, Case No. 11-31944 using the same schedules and forms from Case No. 10-60384. The Court found that the filing was made "in bad faith and in an attempt to thwart the orders of the California

Bankruptcy Court," and that it constituted an "abuse of process." McDaniel Decl., ¶ 2, <u>Exh. A</u>.

It should be noted that Debtor's real property located at 4680 Meritage Court was not part of Case No. 10-60384. That property was held in fee by Debtor's now deceased wife. The Meritage Court property was never administered in any bankruptcy proceeding.

### B. The Present Voluntary Petition

Before the present Chapter 13, Debtor filed a voluntary petition in Chapter 11 in this Court on October 13, 2015. Debtor apparently failed to file the appropriate documents and the case was dismissed on October 28, 2015. This petition was apparently filed to stay pending the trustee's sale of 4680 Meritage Court, Gilroy California.

On December 22, 2015, Debtor filed the present voluntary petition in Chapter 13. Initially, Debtor's filings were skeletal, but they have since been supplemented. McDaniel Decl. ¶ 5, <u>Exh. E</u>. However, Debtor claims that he has significant assets that are unencumbered by even a first mortgage. As demonstrated below, this claim is demonstrably false.

#### 1. 4680 Meritage Court, Gilroy

Debtor claims that he owns the property located at 4680 Meritage Court, Gilroy, California, and values it at $1,350,000. According to his Schedule D, the only debts on the property are two liens, one held by Quail Creek and the other by Meritage Home Owners' Association ("Meritage HOA") in the combined total amount of approximately $20,000. McDaniel Decl. ¶ 6, <u>Exhs. G and H</u>.

Debtor does not list and omits a first mortgage on the property held by BAC Home Loan Services in the approximate amount of $1,939,550.25 (this amount is no over $2,200,000 due to defaults). The evidence of this debt is Debtor's own admission in Debtor's October 4, 2010 bankruptcy in which he received a Chapter 7 discharge on September 14, 2011, Case No. 10-60384 (hereafter "Debtor's 2010 Chapter 7") and the schedules filed therein listing the lien against the property as recently as November 17, 2010. McDaniel Decl. ¶ 7, <u>Exh. I</u>. However, Debtor did not own title to this property when he filed his 2010 Chapter 7. Debtor's bankruptcy estate had no interest in the property as it was held in fee title by Leslie Narog as her separate property. It is

4834-5941-7647, v. 1　　　　　　　　　　　　3
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Case: 15-54015　　Doc# 40　　Filed: 04/05/16　　Entered: 04/05/16 18:24:36　　Page 6 of 17

1 | further confirmed by the Notice of Default recorded January 26, 2015, the Notice of Trustee's Sale recorded June 10, 2015, and the Objection to Confirmation of Chapter 13 Plan filed by the creditor in this action on March 21, 2016. McDaniel Decl. ¶ 3, Exh. B and C, ¶ 10, Exh. K.

### 2. 17411 Avenida, Los Altos Prunedale

Debtor claims that he owns the property located at 17411 Avenida, Los Altos Prunedale, California and values it at $558,000. According to his Schedule D, the only debt on the property is a secured lien held by Allied Trustee Service in the amount of $3,200. McDaniel Decl. ¶ 6, Exhs. G and H.

Debtor does not list and omits a first mortgage on the property in the approximate amount of $909,178. The evidence for this debt is Debtor's own admission in Debtor's Chapter 7 schedules listing the lien against the property as recently as November 17, 2010. McDaniel Decl., ¶ 7, Exh. I. There is no evidence in Debtor's Chapter 7 case that any action was taken against this lien.

### 3. 22425 Rancho Ventura St., Cupertino

Debtor claims that he owns the property located at 22425 Rancho Ventura St., Cupertino California and values it at $1,550,000. According to his Schedule D, the property has two liens against it, one held by Jacqueline Bacus for $865,000 and one by California Secured Funding in the total amount of $959,000. McDaniel Decl. ¶ 6, Exhs. G and H.

Debtor does not clarify the purpose for the debt. In July 2015, Debtor listed a first mortgage against the property of $866,003.35 in Debtor's 2010 Chapter 7 schedules. McDaniel Decl., ¶ 7, Exh. I. It is unknown whether this first has been omitted, as have the first mortgages on Debtor's other properties, or if it was satisfied using the funds from the loan provided by Jacqueline Bacus and which is now secured by the property. Without more knowledge about the details of the transaction, the remainder of this analysis gives the Debtor the benefit of the doubt and assumes that only one or the other lien remains on this particular property. There is no evidence in Debtor's 2010 Chapter 7 that any action was taken against these liens.

### 4. 1255 Lions Peak Lane, San Martin

Debtor claims that he owns the property located at 1255 Lions Peak Lane, San Martin, California and values it at $1,150,000. According to his Schedule D, the property has no liens against it. McDaniel Decl. ¶ 6, Exhs. G and H.

Debtor does not list and omits the lien on the property (presumably a first mortgage) in the approximate amount of $1,563,828. The evidence for this debt is Debtor's own admission in Debtor's Chapter 7 schedules listing the lien against the property as recently as November 17, 2010. McDaniel Decl., ¶ 7, Exh. I. This is further confirmed by the Objection to Confirmation of Chapter 13 Plan filed on March 17, 2016 and asserting a lien on this property. McDaniel Decl., ¶ 9, Exh J. There is no evidence in Debtor's 2010 Chapter 7 that any action was taken against this lien.

### 5. 1185 Quail Ridge Way, Hollister

Debtor claims that he owns the property located at 1185 Quail Ridge Way, Hollister, California and values it at $550,000. According to Debtor's Schedule D, the property has no liens against it. McDaniel Decl. ¶ 6, Exhs. G and H.

In July 2015, Debtor claimed an ownership interest in *1186* Quail Ridge Way (the "1186 Property"), Hollister. At the time, the 1186 Property was encumbered by a first mortgage in the amount of $690,344 according the schedules for Debtor's 2010 Chapter 7. McDaniel Decl., ¶ 7, Exh. I. It stretches believability, to assume that Debtor sold the underwater and over-encumbered 1186 Property and bought the adjacent property, for cash, in the last five years. Much more likely is the possibility that a typo has occurred in one schedule or the other and that they are the same property secured by the same mortgage. However, for the purposes of this analysis, the Debtor will again be given the benefit of the doubt and the analysis will not include a first mortgage on the property Debtor claims he owns located at *1185* Quail Ridge Way.

### 6. 1659 Little River Dr., Salinas

Debtor claims that he owns the property located at 1659 Little River Dr., Salinas, California and values it at $475,000. According to Debtor's Schedule D, the property has no liens against it.

4834-5941-7647, v. 1                                5
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY
Case: 15-54015    Doc# 40    Filed: 04/05/16    Entered: 04/05/16 18:24:36    Page 8 of 17

McDaniel Decl. ¶ 6, Exhs. G and H.

Debtor does not list and omits the lien on the property (presumably a first mortgage) in the approximate amount of $624,476. The evidence for this debt is Debtor's own admission in Debtor's Chapter 7 schedules listing the lien against the property as recently as November 17, 2010. McDaniel Decl., ¶ 7, Exh. I. There is no evidence in Debtor's 2010 Chapter 7 that any action was taken against this lien

### C. Debtor Claims he Receives $14,990 Per Month in Rental Income and That He is Not Obligated to Pay the Above Mortgages

At the 11 U.S.C. § 341 meeting of creditors held on March 21, 2016, Debtor claimed that his income consisted of rental income and social security. McDaniel Decl. ¶ 8. Debtor claims $14,990 per month in rental income and $1,836 from social security in his Chapter 13 Statement of Current Monthly Income. When asked whether he was paying for a mortgage with that income, he testified that he was not. McDaniel Decl. ¶ 8.

When asked whether his properties were security for mortgages, Debtor claimed to be taking the position that there were no such mortgages or that he had no liability on those mortgages. It was not clear on what legal basis Debtor makes this claim. Debtor also claimed that he had not received rental income in the two years prior to filing. McDaniel Decl. ¶ 8.

Effectively, it appears that Debtor is renting out the properties for which he claims an ownership interest, not paying any of his secured creditors, and reaping the benefits for himself while not paying any debts.

### D. Debtor is Not Paying Post-Petition Obligations as They Accrue

Debtor resides at 4680 Meritage Court, Gilroy California. As such, he is part of the Meritage HOA and a member of Quail Creek. Debtor receives water and services from these two entities and he has an ongoing obligation to pay for those services. The bills are also secured by liens against the property. Declaration of David B. Draper in support of motion for relief from stay ("Draper Decl."), ¶ 2.

Debtor has not been paying his water bill as it accrues and has made no adequate

4834-5941-7647, v. 1                                6
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY
Case: 15-54015    Doc# 40    Filed: 04/05/16    Entered: 04/05/16 18:24:36    Page 9 of 17

assurances of payment to the water company. Debtor had not paid his water bill for five years. Quail Creek sued for judicial foreclosure. That case was settled when Debtor agreed to make payments for his arrears and stay current on his water bill. Debtor executed a stipulated judgment to that effect. Debtor is now four months behind in his water bills and payments, yet he continues to use water provided by Quail Creek. Draper Decl. ¶ 3.

## III. ARGUMENT

### A. Relief the Automatic Stay Should be Granted Because the Bankruptcy was Filed in Bad Faith

The Bankruptcy Code imposes on debtors and their attorneys an ethical duty not to abuse the judicial system. *In re Kinney*, 51 B.R. 840, 844 (Bankr. C.D. Cal. 1985). To allow the debtor to manipulate the judicial process to effectuate needless delays of foreclosure is a fraud on creditors. See, *Id*. Where a debtor is utilizing "the automatic stay without the intent or ability to reorganize their financial activities or effectuate a realistic repayment plan, they are abusing the bankruptcy system." *Id*.

"The Bankruptcy Code implicitly and explicitly imposes on debtors a duty of good faith in filing and maintaining bankruptcy actions." *Id*. In a Chapter 13 reorganization, "good faith requires that there must be a reasonable expectation on the part of the debtor that he can successfully reorganize and he must undertake efforts to carry out the reorganization." *In re Kinney*, 51 B.R. 840, 844 (repeated filings with no attempt by the debtor to make payments, constituted bad faith).

The Bankruptcy Code authorizes relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Debtor's bad faith constitutes "cause" under section 362(d)(1) and relief from stay is an allowed remedy to combat such bad faith filings. *In re Kinney*, 51 B.R. 840, 846.

Here, Debtor's bad faith can be shown by his failure to pay post-petition debts as the accrue, his misrepresentations under penalty of perjury regarding his assets and the debts secured by those assets, and the fact that he is disqualified from reorganizing under Chapter 13 and

4834-5941-7647, v. 1  7
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Case: 15-54015   Doc# 40   Filed: 04/05/16   Entered: 04/05/16 18:24:36   Page 10 of 17

ineligible for a Chapter 7 discharge. This conclusion is bolstered by Debtor's multiple prior bankruptcy filings which have had the effect of thwarting efforts to foreclose on his properties. Debtor is making a mockery of the Bankruptcy Code and believes he can get away with not telling the truth. For the following reasons, Quail Creek should be granted relief from the automatic stay to foreclose on their utilities lien against its security.

### 1. Relief Should be Granted for Failure to Make Post-Petition Payments

The bankruptcy process exists to give honest debtors breathing room from the collection efforts of their creditors. See, 11 U.S.C. §§ 362(a) subsections 1, 2, and 5-8. It does not exist to give a debtor a free pass to continue to accrue debts and default on obligations arising after the date of the petition. The Bankruptcy Code requires that a debtor furnish to a utility company adequate assurances of payments within 20 days after the petition is filed. 11 U.S.C. § 366(b). If a debtor does not make adequate assurances to the utility company, the company can discontinue services. 11 U.S.C. § 366(b).

Debtor has made no payments for water services that have been delivered since he filed his voluntary petition on December 22, 2015. Draper Decl. ¶ 3. The Debtor has also made no adequate assurances of payment. *Id.* Quail Creek Estates Mutual Water Company is a small water company consisting of 18 members, which consist of the owners of houses in a small development in Gilroy. When Debtor defaults on his payment obligations, the burden of subsidizing his water consumption falls on his neighbors, the members of Quail Creek. The members of Quail Creek have been involuntarily paying for Debtor's water bills for nearly six years.

Debtor not only continues to receive water at his residence, but he has even installed a new lawn, which he waters on a regular business despite the recent rain, without paying. Debtor's longstanding default existed well before he filed for Chapter 13 bankruptcy and continues despite his obligation to make payments during the pendency of his bankruptcy. Draper Decl. ¶ 2. This bankruptcy appears to be, as discussed at greater length below, nothing more than an attempt to delay his obligation to pay bills and foreclosures on Debtor's properties without any good faith attempt at submitting a Chapter 13 plan for which Debtor knows he does not qualify.

### 2. Debtor has Made Substantial Misrepresentations, Under Penalty of Perjury, Regarding the Secured Claims Against his Listed Assets

Debtor has listed six parcels of real property that he attests, under penalty of perjury, he owns in fee simple and each has substantial equity or is owned by Debtor free and clear. Debtor claims only five secured debts, none of which are identified as first mortgages and all of which are for a small fraction of the value of the property. The following table shows Debtor's claimed assets and claimed secured debts:

| Assets claimed by Debtor (Schedule A/B[1] and Schedule C) | Secured debts as listed by Debtor (Schedule D) |
| --- | --- |
| **4680 Meritage Court** <br> **Gilroy CA** <br> Claimed value - $1,350,000 | Quail Creek Estate Mutual Water Co <br> Secured debt for water - $7,400 <br><br> Meritage Home Owners' Assoc. <br> Secured debt for HOA fees - $14,600 <br><br> Total listed secured debt for this property - $20,000 |
| **17411 Avenida** <br> **Los Altos Prunedale CA** <br> Claimed value - $558,000 | Allied Trustee Service <br> Secured debt (for unknown) - $3,200 <br><br> Total listed secured debt for this property - $3,200 |
| **22425 Rancho Ventura St.** <br> **Cupertino CA** <br> Claimed value - $1,550,000 | Jacqueline Bacus <br> Secured debt (for unknown) - $865,000 <br><br> California Secured Funding <br> Secured debt for 2nd - $94,000 <br><br> Total listed secured Debt for this property - $959,000 |
| **1255 Lions Peak Lane** <br> **Sa [sic] Martin CA** <br> Claimed value - $1,150,000 | None |

---

[1] Debtor Claimed at his 11 U.S.C. § 341 meeting of creditors that he could only list three items in his schedule A/B, so he lumped the value of four of his claimed properties into the item labelled 1255 Lions Peak Lane. All six properties are broken out in his Schedule C as property claimed to be exempt and the stated values come from that document.

4834-5941-7647, v. 1      9

| | |
|---|---|
| **1185 Quail Ridge Way**<br>**Hollister CA**<br>Claimed value - $550,000 | None |
| **1659 Little River Dr.**<br>**Salinas CA**<br>Claimed value - $475,000 | None |
| **Total Assets** – $5,633,000<br>(Debtor's valuation | **Total listed secured debt** - $984,200 |

The above table shows Debtor's assets and liabilities if his bankruptcy schedules are taken at face value. According to Debtor, he has well over four million dollars in equity in his assets. Debtor also lists no unsecured claims of any amount.

The reality is that Debtor has substantial liens against each of his properties, constituting, in primary part, a first mortgage on each property. Almost every one of the above properties appears to be "under water," as shown below and 4680 Meritage Court has had have a dozen trustee's sale dates postponed. The following table shows the entire picture of Debtor's assets and secured liabilities, whether listed by Debtor or omitted from the Debtor's schedules:

| **Assets claimed by Debtor**<br>(Schedule A/B and Schedule C) | **Secured debts as listed by Debtor**<br>(Schedule D) | **Unlisted debts secured by the Debtor's claimed assets** |
|---|---|---|
| **4680 Meritage Court**<br>**Gilroy CA**<br>Claimed value - $1,350,000 | Quail Creek Estate Mutual Water Co<br>Secured debt for water - $7,400<br><br>Meritage HOA<br>Secured debt for HOA fees - $14,600<br><br>Total listed secured debt for this property - $20,000 | BAC Home Loan Services<br>First Mortgage – ~$1,939,550.25 as of 6/10/15 |
| **17411 Avenida**<br>**Los Altos Prunedale CA**<br>Claimed value - $558,000 | Allied Trustee Service<br>Secured debt (for unknown) - $3,200<br><br>Total listed secured debt for this property - $3,200 | BAC Home Loan Services<br>First Mortgage – ~$909,178 as of 11/17/10 |
| **22425 Rancho Ventura St.**<br>**Cupertino CA** | Jacqueline Bacus<br>Secured debt (for unknown) - | Chase Bank<br>First Mortgage – |

4834-5941-7647, v. 1

10

| | | |
|---|---|---|
| Claimed value - $1,550,000 | $865,000<br><br>California Secured Funding Secured debt for 2nd - $94,000<br><br>Total listed secured debt for this property - $959,000 | ~$866,003.35[2] as of 7/20/15 |
| **1255 Lions Peak Lane Sa [sic] Martin CA**<br>Claimed value - $1,150,000 | | BAC Home Loans Service Unknown lien – ~$1,563,828 as of 11/17/10 |
| **1185 Quail Ridge Way Hollister CA**<br>Claimed value - $550,000 | | In Debtor's 2010 Chapter 7 he listed a property located at *1186* Quail Ridge Way with a First Mortgage by BAC Home Loan Services of $690,344[3] |
| **1659 Little River Dr. Salinas CA**<br>Claimed value - $475,000 | | BAC Home Loan Services Unknown lien – ~$624,476 as of 11/17/10 |
| **Total Assets – $5,633,000** (Debtor's valuation) | **Total listed secured debt –** $984,200 | **Total omitted secured debt (approximate) –** ~$5,037,032.25[4] |

As shown by the above table, Debtor very recently had substantial liens against each of the properties he claims as unencumbered assets. During Debtor's 2010 Chapter 7, the Chapter 7 trustee administering the bankruptcy sought and received an order to abandon the real property owned by Debtor. (McDaniel Decl., ¶ 2, Exh. A.) There was no equity in the properties at that time and no value to add to the bankruptcy estate by liquidating those same properties that are now

---

[2] This amount may or may not be duplicative of the secured debt owed to Jacqueline Bracus listed by Debtor. As such, Quail Creek will give Debtor the benefit of the doubt and exclude it from the analysis.
[3] It is unclear whether these properties are the same. However, for the purposes of this analysis Quail Creek will not consider the likely possibility that there is also a secured debt against this property in the approximate amount of $690,344
[4] As noted above, this number is exclusive of the possible first mortgages on 22425 Rancho Ventura St. and 1185 Quail Ridge Way. If those first mortgages do exist, the total unlisted debt would be approximately $6,593,378.60.

4834-5941-7647, v. 1                    11

claimed to be free-and-clear by Debtor. Debtor has offered no explanation as to how the above liens were satisfied in full, while he retains the assets and uses them as rentals. The simple explanation is that Debtor is either lying about the liens against the properties that he claims are his assets or he is taking an unjustifiable legal position that is not supported by any law.

Quail Creek believes that Debtor intentionally omitted the above liens against his claimed properties and in doing so has perjured himself before this Court. For this reason alone, Debtor's filing was made in bad faith and relief from the stay should be granted.

### 3. Debtor Does Not Qualify for Chapter 13 Discharge Because He Secured, Noncontingent, Liquidated Debt in Excess of the Debt Limitations – 11 U.S.C. § 109(e)

A Chapter 13 discharge is limited to "an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525." 11 U.S.C. § 109(e). The debtor's total secured debt at the time the petition is filed is used to determine whether eligibility is met. *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1073 (9th Cir. 1999). As stated by the Ninth Circuit, whether a debt is disputed regarding liability does not render a debt unliquidated:

> [i]f the amount of the creditor's claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated. Whether the debt is subject to "ready determination" will depend on whether the amount is easily calculable or whether an extensive hearing will be needed to determine the amount of the debt, or the liability of the debtor. [Citation.] Therefore, the mere assertion by the debtor that he is not liable for the claim will not render the debt unliquidated for the purposes of calculating eligibility under § 109(e).

*Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1074 (9th Cir. 1999).

Omission of the amount of a debt, where listing the debt would put the debtor over the statutory limit, constitutes bad faith even if the debt is disputed. *In re Thalmann*, 469 B.R. 677, 682 (Bankr. S.D. Tex. 2012).

As shown above, Debtor has listed in his schedules secured debts of $984,200. He has also omitted secured debts against properties he claims as assets in the approximate amount of $5,037,032.25. Debtor's listed and unlisted secured debt is greater than five times in excess of the

statutory limit for Chapter 13 participation. Regardless of whether Debtor disputes the debts or not, they are readily and easily determinable from the mortgage documents, sufficiently so that Debtor has listed them in his past bankruptcies. (see, McDaniel Decl. ¶ 7, Exh. I.) Debtor has never provided an explanation of any kind for the "disappearance" of the many and substantial liens against his properties.

The mortgage on Debtor's property located at 4680 Meritage Court Gilroy CA of $1,939,550.25 is by itself sufficient to disqualify Debtor from receiving a Chapter 13 discharge. This debt constitutes the first mortgage on the property that is also securing the debt owed to Quail Creek. The evidence for this debt includes a Notice of Trustee's sale filed as recently as June 10, 2015 and the objection to the Debtor's plan filed by the mortgage holder. Similarly, the debt secured by the property located at 1255 Lions Peak Lane of ~$1,563,828, as evidenced by Debtor's prior schedules and the Objection to Confirmation of Chapter 13 Plan filed by the creditor also by itself disqualifies Debtor.

The Debtor's undisclosed, secured debts will not stay hidden forever. Already, two of Debtor's secured creditors have objected to Debtor's plan on the basis that it does not account for their liens against assets for which he is claiming to have an ownership interest.

Debtor cannot receive a discharge under Chapter 13. Since he cannot receive a discharge and because he omitted his secured debts to hide this fact, Debtor could only have filed this Chapter 13 voluntary petition in bad faith to further delay and frustrate his secured creditors.

**4. Debtor Does Not Qualify for Chapter 7 Discharge**

A debtor is not entitled to a Chapter 7 discharge unless he has not received a Chapter 7 discharge within 8 years before the date of the petition. 11 U.S.C. § 727(a)(8).

Conversion is not an option or possibility for Debtor because he received a Chapter 7 discharge in 2011. Debtor is not eligible for Chapter 13 or Chapter 7 relief and cannot show that he has filed this petition in good faith to seek a discharge at any time, even if the ability to convert a case is taken into account.

4834-5941-7647, v. 1                     13
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Case: 15-54015   Doc# 40   Filed: 04/05/16   Entered: 04/05/16 18:24:36   Page 16 of 17

## IV. CONCLUSION

For the foregoing reasons, Quail Creek respectfully requests relief from the automatic stay to foreclose on its secured lien on 4680 Meritage Court. Cause exists due to Debtor's bad faith filing of this bankruptcy to frustrate and delay his creditors.

Dated: April 5, 2016                    TERRA LAW LLP


By: /s/ James A. McDaniel
James A. McDaniel
Attorneys for Creditor Quail Creek Estates
Mutual Water Company

4834-5941-7647, v. 1                    14
MOTION FOR RELIEF FROM STAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM STAY

Case: 15-54015    Doc# 40    Filed: 04/05/16    Entered: 04/05/16 18:24:36    Page 17 of 17